# LIONBRIDGE

STATE OF NEW YORK    )
                     )
                     )        ss
                     )
COUNTY OF NEW YORK   )

### **CERTIFICATION**

This is to certify that the attached translation is, to the best of my knowledge and belief, a true

and accurate translation from Romanian into English of the attached Declaration of Aureliu

Colenco.

_____

Laura Musich, Managing Editor
Lionbridge

Sworn to and subscribed before me

this 7th day of June, 20 23.

_____

ETHAN WIN LY
NOTARY PUBLIC-STATE OF NEW YORK
No. 01LY6323702
Qualified in New York County
My Commission Expires 04-27-2027

259 W 30th Street, 11th Floor  New York, NY 10001  +1.212.631.7432

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**

| | |
|---|---|
| **IN RE APPLICATION OF ILAN SHOR FOR AN ORDER DIRECTING DISCOVERY FROM MATEI DOHOTARU PURSUANT TO 28 U.S.C. § 1782** | Case No. _____ |

**DECLARATION OF AURELIU COLENCO IN SUPPORT OF**
**ILAN SHOR'S PETITION FOR DISCOVERY**
**IN AID OF A FOREIGN PROCEEDING PURSUANT TO 28 U.S.C. §**
**1782**

Mr. Aureliu Colenco hereby declares, under penalty of perjury pursuant to 28 U.S.C. § 1746, that the following statements are true and correct:

1.  My name is Aureliu Colenco. I am a lawyer practicing in the Republic of Moldova. I have been admitted to practice before the Courts of Moldova since April 1, 2015, with the license number 2806. I maintain my legal offices at 22 Mihail Kogalniceanu Street, Chisinau, Republic of Moldova. I have personal knowledge of the information provided in this Declaration, except where I note that certain information has been communicated to me by others. All of the information stated herein is true to the best of my knowledge and belief.

2.  I am advised and understand that this Declaration will be submitted with a Petition for Discovery in Aid of a Foreign Proceeding pursuant to 28 U.S.C. § 1782 ("**the Petition**"), and that the Petition will be submitted to a United States Court on behalf of Mr. Ilan Shor. I am further advised and understand that the Petition will ask the United States Court to compel the production of documents and testimony from Mr. Matei Dohotaru.

3.  Since approximately April 1, 2020, I have acted as legal counsel for Mr. Shor in criminal proceedings in Moldova.

1

[signature] [stamp:] COLENCO AURELIU / REPUBLIC OF MOLDOVA / UNION OF LAWYERS / LAW FIRM / COLENCO AURELIU / T/C 44819029 / CHISINAU / BAR ASSOCIATION

4.  Mr. Shor is a prominent businessman and politician in Moldova. Mr. Shor is the leader of the Shor Party, which is currently a minority opposition political party in Moldova. From approximately July 2015 to April 2019, Mr. Shor served as the Mayor of Orhei, which is the administrative center of the Orhei District in Moldova. In March 2019, Mr. Shor became a member of the Parliament of the Republic of Moldova, a position he held until 04.27.2023, when the current parliamentary majority adopted a decision declaring that Mr. Shor's mandate as a member of the Parliament of the Republic of Moldova had been terminated by law and declared vacant, namely in connection with his conviction on 04.13.2023 by the Chisinau Court of Appeal (as described further below).

### *Criminal proceedings against Mr. Shor in Moldova*

5.  In 2016, the Moldovan Anti-Corruption Prosecutor's Office charged Mr. Shor with fraud pursuant to art. 190(5) of the Moldovan Criminal Code and money laundering pursuant to art. 243(3) of the Moldovan Criminal Code. In the underlying investigation and the trial before the court of first instance – the Chisinau Court, Buiucani Division, Mr. Dohotaru was the prosecution's main witness against Mr. Shor.

6.  On June 21, 2017, the Chisinau Court issued a judgment that acquitted Mr. Shor of fraud pursuant to art. 190(5) of the Moldovan Criminal Code but found him guilty of causing material damage through deception or abuse of trust pursuant to art. 196(4) of the Moldovan Criminal Code and money laundering pursuant to art. 243(3) of the Moldovan Criminal Code ("**the Judgment**").

7.  The court of first instance rested its guilty verdict largely on Mr. Dohotaru's testimony, which is contested by Mr. Shor in numerous key respects. Among other things, Mr. Dohotaru alleged in his witness statement that companies connected to Mr. Shor were involved in fictitious banking transactions to conceal bank fraud, allegations the court of first instance accepted in the Judgment. Mr. Shor, both at the court of first instance and in his appeal, has contested the factual basis for Mr. Dohotaru's statement, as well as Mr. Dohotaru's credibility as a witness.

2

[signature] [stamp:] COLENCO AURELIU / REPUBLIC OF MOLDOVA / UNION OF LAWYERS / LAW FIRM / COLENCO AURELIU / T/C 44819029 / CHISINAU / BAR ASSOCIATION

8. On July 28, 2017, the Anti-Corruption Prosecutor's office commenced an appeal against the Judgment. On July 31, 2017, Mr. Shor commenced an appeal against the Judgment in the Cahul Court of Appeal, which was later moved to the Chisinau Court of Appeal.

9. Under Moldovan criminal law and procedure, the Court of Appeal may re-hear all the evidence that was presented in the court of first instance, as well as fresh evidence. Moreover, a criminal defendant may submit new exculpatory evidence for a court's consideration at any stage of the proceedings, or even after the proceedings have concluded.

10. Accordingly, on behalf of Mr. Shor, my co-counsel and I sought the testimony of Mr. Dohotaru for use in the proceedings before the Court of Appeal. Specifically, on or about July 7, 2021, we filed a request that a hearing be ordered for the prosecution witness Matei Dohotaru and that the Court summon him to appear at the hearing with the Cahul Court of Appeal.

11. On or about August 20, 2021, the Moldovan Supreme Court of Justice transferred Mr. Shor's appeal from the Cahul Court of Appeal to the Chisinau Court of Appeal. Under Moldovan law, the Chisinau Court of Appeal was required to restart the re-examination of evidence. In the Chisinau Court of Appeal, the prosecution requested Mr. Dohotaru as witness #1 on their witness list, which the Court approved. The prosecution then represented to the Court that Mr. Dohotaru was unavailable for live testimony, as he resided outside of Moldova in the United States.

12. Mr. Dohotaru is a witness, not a party, in the proceedings for which his evidence is sought. His statements form the basis of the alleged facts used by the prosecution in their indictment of Mr. Shor. At the Cahul Court of Appeal, before the appeal was transferred to Chisinau, the Court allowed Mr. Dohotaru's witness statements from the first instance trial to be read out. Upon information that Mr. Dohotaru was in Moldova, the Cahul Court also accepted our request for Mr. Dohotaru to appear in court. In the Chisinau Court of Appeal, the Court accepted the prosecution's witness list, including Mr. Dohotaru as the first prosecution witness. It remained the position of the

3

[signature] [stamp:] COLENCO AURELIU / REPUBLIC OF MOLDOVA / UNION OF LAWYERS / LAW FIRM / COLENCO AURELIU / T/C 44819029 / CHISINAU / BAR ASSOCIATION

prosecution's office that they were unable to produce Mr. Dohotaru for live testimony, as he lives abroad in the United States.

13. Because Mr. Dohotaru apparently resides and works in the United States, we were not able to conduct his examination in the Chisinau Court of Appeal. In my view as Mr. Shor's lead criminal defense counsel, the taking of Mr. Dohotaru's testimony for use in the criminal proceedings was of critical importance, given the central role that Mr. Dohotaru played in the trial before the court of first instance and the fresh evidence we have since obtained, which contradicts Mr. Dohotaru's witness statements and testimony.

14. Furthermore, it is my view that Mr. Dohotaru likely has potentially relevant documents in his possession. Such documents are likely to include communications with the prosecutor's office in Moldova concerning his testimony, cooperation agreements or other documents evidencing any agreement, concession, consideration, or benefit offered to him in exchange for his cooperation in providing testimony against Mr. Shor, and documents concerning alleged fraudulent banking transactions that occurred while Mr. Dohotaru held an official position with the National Bank of Moldova.

15. In addition to myself and my Moldovan colleagues, Mr. Shor has also recently (since December 2022) been represented in the criminal proceedings in Moldova by counsel from the United Kingdom, Shaul Brazil and John Binns, partners at the firm BCL Solicitors LLP in London, UK, who were admitted to the Registry of Foreign Lawyers of the Republic of Moldova in December 2022. At a hearing in Moldova on March 10, 2023, the UK counsel filed a request for additional time to be granted for the purposes of pursuing the Petition and obtaining Mr. Dohotaru's testimony. The request was rejected by the Chisinau Court of Appeal.

16. As indicated above, the appeal proceedings before the Chisinau Court of Appeal commenced in August 2021. At the hearing on March 10, 2023, after 17 months of trial, the Court of Appeal declared that the judicial inquiry (the evidential stage of the proceedings) had been completed and directed that closing submissions would be made on April 12, 2023.

4

[signature] [stamp:] COLENCO AURELIU / REPUBLIC OF MOLDOVA / UNION OF LAWYERS / LAW FIRM / COLENCO AURELIU / T/C 44819029 / CHISINAU / BAR ASSOCIATION

17. Following the conclusion of closing submissions on April 13, 2023, on the same day, the Court of Appeal immediately retired to consider their decision and – within hours - issued a final judgment, rejecting Mr. Shor's appeal as unfounded (and/or issued out of time) and admitting the prosecution's appeal, thereby finding Mr. Shor guilty of fraud pursuant to art. 190(5) of the Moldovan Criminal Code and money laundering pursuant to art. 243(3) of the Moldovan Criminal Code. The Court sentenced Mr. Shor to 15 years' imprisonment.

18. Delivery of the reasoned decision (the Court's written judgment) affirming Mr. Shor's conviction took place on May 30, 2023. The reasoned decision is approximately 200 pages in length and a professional English translation has not yet been obtained. However, I confirm that the Court has continued to rely on Mr. Dohotaru's testimony from the first instance trial as the primary evidence against Mr. Shor.

19. Disregarding all defense arguments concerning the lack of veracity of Mr. Dohotaru's statements and requests to hear him in the court of appeal (in any of the ways provided for by the Code of Criminal Procedure), especially in the context of the fresh evidence adduced, Chisinau Court of Appeal aggravated Mr. Shor's situation by delivering a much more serious result than the one given by the first instance, without hearing the witness in question, but relying on his previous statements, which were not even read out in the prescribed manner. Notwithstanding the fact that the appeal proceedings have now concluded, and in light of the circumstances set out in this Declaration, it is my view that the taking of Mr. Dohotaru's testimony remains of key importance and particularly relevant.

### *Ordinary cassation (appeal)*

20. First, on or prior to June 30, 2023 (that is, within the statutory period of 30 days from the date of the pronouncement of the reasoned decision), my co-counsel and I will be commencing a cassation appeal with the Supreme Court of Justice of the Republic of Moldova, which constitutes the domestic court of last resort.

21. Under Article 435 of the Moldovan Code of Criminal Procedure, the Supreme Court of Justice is competent to issue one of the following decisions:

5

[signature] [stamp:] COLENCO AURELIU / REPUBLIC OF MOLDOVA / UNION OF LAWYERS / LAW FIRM / COLENCO AURELIU / T/C 44819029 / CHISINAU / BAR ASSOCIATION

(i)  reject the appeal as inadmissible and uphold the judgment appealed, or

(ii) admit the appeal and repeal, in whole or in part, the judgment appealed by:

- upholding the judgment of the court of first instance where the appeal is deemed to have been erroneously admitted,

- acquit the defendant or terminate the criminal proceedings against him,

- re-hear the case and deliver a new judgment, or order that the case be re-heard by the Court of Appeal if a judicial error cannot be remedied by the Supreme Court of Justice.

22. In principle, the Supreme Court of Justice rules primarily on matters of law and is not generally a court of fact. However, fresh evidence may still be introduced at this stage if that evidence was not known to the defendant, or the defendant did not have access to that evidence before the Court of Appeal issued its verdict.

23. In the circumstances of the present case, the taking of Mr. Dohotaru's testimony is necessarily contingent on the granting of the Petition. As such, Mr. Shor did not have access to this evidence during the proceedings before the Court of Appeal and will be entitled to introduce it, once obtained, before the Supreme Court of Justice.

24. Against that backdrop, it is my view that the testimony and documents obtained from Mr. Dohotaru may still be introduced and evaluated in the criminal proceedings against Mr. Shor, either before the Supreme Court of Justice or the Court of Appeal (should the Supreme Court of Justice order that the case be re-heard by the Court of Appeal).

***Extraordinary means of appeal***

25. In addition to the above, the Moldovan Code of Criminal Procedure provides for extraordinary means of appeal – "cassation for annulment" and "review of criminal proceedings", which may be brought in respect of irrevocable judgments (i.e., where all ordinary means of appeal have been exhausted). An extraordinary appeal in favor of the defendant may commence at any time.

6

[signature] [stamp:] COLENCO AURELIU / REPUBLIC OF MOLDOVA / UNION OF LAWYERS / LAW FIRM / COLENCO AURELIU / T/C 44819029 / CHISINAU / BAR ASSOCIATION

26. Under Article 458 of the Moldovan Code of Criminal Procedure, a "review of criminal proceedings" may be requested where new facts, unknown at the time of issuing the final irrevocable judgment, prove the defendant's innocence or that the defendant committed a lesser offence than the one for which he was convicted.

27. Under Articles 462 and 463 of the Moldovan Code of Criminal Procedure, a "review of criminal proceedings" is a *de novo* hearing of the case in accordance with rules of procedure applicable to first instance trials, including re-examination of previously admitted evidence and evaluation of fresh evidence submitted by the parties.

***Conclusion***

28. As Mr. Shor's criminal counsel in the Moldovan criminal proceedings, I can affirm that Mr. Shor is not attempting to circumvent any applicable evidence-gathering restrictions. To the best of my knowledge, there are no rules that prohibit Mr. Shor from filing the Petition in the United States.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on this 6th day of June 2023 in Chisinau, Moldova.

*/s/* [signature]
Aureliu Colenco

[stamp:] COLENCO AURELIU
REPUBLIC OF MOLDOVA
UNION OF LAWYERS
LAW FIRM
COLENCO AURELIU
T/C 44819029
CHISINAU
BAR ASSOCIATION

## ÎN CURTEA DISTRICTUALĂ A STATELOR UNITE

## PENTRU DISTRICTUL DE EST AL VIRGINIEI

| | |
|---|---|
| ÎN CEEA CE PRIVEȘTE CEREREA LUI ILAN SHOR DE OBȚINERE A UNEI ORDONANȚE PRIN CARE SĂ SE DISPUNĂ PREZENTAREA DE PROBE DE LA MATEI DOHOTARU ÎN CONFORMITATE CU 28 U.S.C. § 1782 | Cauza Nr. _____ |

### DECLARAȚIA LUI AURELIU COLENCO ÎN SPRIJINUL PETIȚIEI LUI ILAN ȘOR PRIVIND OBȚINEREA DE PROBE ÎN SPRIJINUL UNEI PROCEDURI STRĂINE ÎN CONFORMITATE CU 28 U.S.C. § 1782

Domnul Aureliu Colenco declară prin prezenta, sub sancțiunea de sperjur, în conformitate cu 28 U.S.C. § 1746, că următoarele declarații sunt adevărate și corecte:

1. Numele meu este Aureliu Colenco. Sunt avocat care practică în Republica Moldova. Am fost admis să exercit profesia în fața instanțelor de judecată din Republica Moldova din 1 aprilie 2015, cu numărul de licență 2806. Îmi mențin biroul de avocatură la adresa: strada Mihail Kogălniceanu 22, Chișinău, Republica Moldova. Cunosc personal informațiile furnizate în această Declarație, cu excepția cazurilor în care menționez că anumite informații mi-au fost comunicate de către alte persoane. Toate informațiile declarate în prezenta declarație sunt adevărate, după cunoștințele și convingerile mele.

2. Sunt informat și înțeleg că această Declarație va fi prezentată împreună cu o Petiție de obținere a unor probe în sprijinul unei proceduri străine în conformitate cu 28 U.S.C. § 1782 ("**Petiția**") și că Petiția va fi prezentată unei instanțe din Statele Unite în numele dlui Ilan Șor. De asemenea, sunt informat și înțeleg că Petiția va solicita instanței din Statele Unite să oblige prezentarea de documente și mărturii din partea dlui Matei Dohotaru.

3. Începând cu aproximativ 1 aprilie 2020, activez în calitate de avocat pentru dl Șor în cadrul procedurilor penale din Moldova.

4. Domnul Șor este un om de afaceri și politician proeminent în Moldova. Dl Șor este liderul Partidului Șor, care este în prezent un partid politic minoritar de opoziție din Moldova. Aproximativ din iulie 2015 până în aprilie 2019, dl Șor a ocupat funcția de primar al orașului Orhei, care este centrul administrativ al raionului Orhei din Moldova. În martie 2019, dl Șor a devenit deputat în Parlamentul Republicii Moldova, funcție pe care deținut-o până la data de 27.04.2023, când actuala majoritate parlamentară a adoptat o hotărâre prin care a constatat încetarea de drept a mandatului de deputat al dlui Șor și l-a declarat vacant, anume în legătură cu condamnarea acestuia, la 13.04.2023, de către Curtea de Apel Chișinău (astfel cum este descris mai jos).

### Proceduri penale împotriva dlui Șor în Moldova

5. În 2016, Procuratura Anticorupție a Republicii Moldova l-a acuzat pe dl Șor de fraudă în temeiul art. 190 alin. (5) din Codul penal al Republicii Moldova și de spălare de bani în conformitate cu art. 243 alin. (3) din Codul penal al Republicii Moldova. În cadrul investigației de bază și al procesului în fața instanței de judecată de primă instanță - Judecătoria Chișinău, oficiul Buiucani, dl Dohotaru a fost principalul martor al acuzării împotriva dlui Șor.

6. La 21 iunie 2017, Judecătoria Chișinău a emis o hotărâre prin care l-a achitat pe dl Șor de fraudă în temeiul art. 190 alin. (5) din Codul penal al Republicii Moldova, dar l-a găsit vinovat de cauzarea de daune materiale prin înșelăciune sau abuz de încredere în temeiul art. 196 alin. (4) din Codul penal al Republicii Moldova și de spălare de bani conform art. 243 alin. (3) din Codul penal al Republicii Moldova ("**Hotărârea**").

7. Instanța de fond și-a întemeiat verdictul de vinovăție în mare parte pe mărturia dlui Dohotaru, care este contestată de dl Șor în numeroase privințe esențiale. Printre altele, dl Dohotaru a susținut în declarația sa de martor că companiile care au legătură cu dl Șor au fost implicate în tranzacții bancare fictive pentru a ascunde frauda bancară, afirmații pe care instanța de fond le-a acceptat în hotărâre. Dl Șor, atât în instanța de fond, cât și în apelul său, a contestat baza factuală a declarației dlui Dohotaru, precum și credibilitatea dlui Dohotaru în calitate de martor.

2

8. La 28 iulie 2017, Procuratura Anticorupție a formulat un recurs împotriva Hotărârii. La 31 iulie 2017, dl Șor a depus un recurs împotriva Hotărârii la Curtea de Apel Cahul, care ulterior a fost transferat la Curtea de Apel Chișinău.

9. În conformitate cu legislația și procedura penală din Republica Moldova, Curtea de Apel poate reaudia toate probele care au fost prezentate în instanța de judecată în primă instanță, precum și probe noi. Mai mult, un inculpat penal poate prezenta noi probe disculpatorii pentru a fi examinate de instanță în orice etapă a procedurii sau chiar și după ce procedura s-a încheiat.

10. În consecință, în numele dlui Șor, eu și co-avocatul meu am solicitat mărturia dlui Dohotaru pentru a fi utilizată în cadrul procedurii în fața Curții de Apel. În mod specific, la 7 iulie 2021 sau în jurul acestei date, am depus o cerere prin care am solicitat să fie dispusă audierea martorului acuzării Matei Dohotaru și să fie citat de către Curte să se prezinte la ședința de judecată la Curtea de Apel Cahul.

11. La sau în jurul datei de 20 august 2021, Curtea Supremă de Justiție a Republicii Moldova a strămutat recursul dlui Șor de la Curtea de Apel Cahul la Curtea de Apel Chișinău. În conformitate cu legislația moldovenească, Curtea de Apel Chișinău a fost obligată să reia reexaminarea probelor. La Curtea de Apel Chișinău, acuzarea l-a solicitat pe dl Dohotaru în calitate de martor nr. 1 pe lista de martori, ceea ce a fost aprobat de instanța. Ulterior, acuzarea a declarat Curții că dl Dohotaru nu este disponibil pentru a depune mărturie în direct, deoarece locuiește în afara Republicii Moldova, în Statele Unite ale Americii.

12. Domnul Dohotaru este martor, nu parte în procedura pentru care se solicită mărturia sa. Declarațiile sale stau la baza faptelor pretinse utilizate de acuzare în acuzarea dlui Șor. La Curtea de Apel Cahul, înainte ca recursul să fie transferat la Chișinău, Curtea a permis citirea declarațiilor de martor ale dlui Dohotaru din procesul de primă instanță. După informarea că dl Dohotaru se află în Moldova, Judecătoria Cahul a acceptat și cererea noastră de prezentare în instanță a dlui Dohotaru. La Curtea de Apel Chișinău, instanța a acceptat lista de martori ai acuzării, inclusiv pe dl Dohotaru în calitate de prim martor al acuzării. Poziția procuraturii a rămas aceea că nu l-au putut prezenta pe

3

dl Dohotaru pentru a depune mărturie în direct, deoarece acesta locuiește în străinătate, în Statele Unite ale Americii.

13. Deoarece se pare că dl Dohotaru locuiește și lucrează în Statele Unite ale Americii, nu am avut posibilitatea de a efectua examinarea sa la Curtea de Apel Chișinău. În opinia mea, în calitate de avocat principal al apărării dlui Șor, luarea mărturiei dlui Dohotaru pentru a fi utilizată în cadrul procedurilor penale a fost de o importanță critică, având în vedere rolul central pe care dl Dohotaru l-a jucat în procesul în fața instanței de fond și noile probe pe care le-am obținut între timp, care contrazic declarațiile și mărturiile dlui Dohotaru.

14. Mai mult, consider că dl Dohotaru are probabil documente potențial relevante în posesia sa. Astfel de documente sunt susceptibile de a include comunicări cu procuratura din Moldova cu privire la mărturia sa, acorduri de cooperare sau alte documente care să ateste orice acord, concesie, contraprestație sau beneficiu care i-a fost oferit în schimbul cooperării sale pentru a depune mărturie împotriva dlui Șor, precum și documente privind presupusele tranzacții bancare frauduloase care au avut loc în timp ce dl Dohotaru deținea o funcție oficială la Banca Națională a Moldovei.

15. În afară de mine și de colegii mei moldoveni, dl Șor a fost reprezentat recent (din decembrie 2022) în cadrul procedurilor penale din Moldova și de avocați din Regatul Unit, Shaul Brazil și John Binns, parteneri la firma BCL Solicitors LLP din Londra, Marea Britanie, care au fost admiși în Registrul avocaților străini din Republica Moldova în decembrie 2022. În cadrul unei audieri în Republica Moldova la 10 martie 2023, avocații din Regatul Unit au depus o cerere de acordare de timp suplimentar în scopul întocmirii Petiției și al obținerii mărturiei dlui Dohotaru. Cererea a fost respinsă de Curtea de Apel Chișinău.

16. După cum s-a indicat mai sus, procedura de recurs în fața Curții de Apel Chișinău a început în august 2021. La ședința din 10 martie 2023, după 17 luni de proces, Curtea de Apel a declarat că ancheta judiciară (etapa probatorie a procedurii) a fost finalizată și a dispus ca pledoariile finale să fie prezentate la 12 aprilie 2023.

4

17. În urma încheierii pledoariilor finale la 13 aprilie 2023, în aceeași zi, Curtea de Apel s-a retras imediat pentru a examina decizia sa și - în câteva ore - a emis o hotărâre definitivă, respingând recursul dlui Șor ca nefondat (și/sau emis peste termen) și admițând recursul procurorului, declarându-l astfel pe dl Șor vinovat de înșelăciune în conformitate cu art. 190 alin. (5) din Codul penal al Republicii Moldova și de spălare de bani conform art. 243 alin. (3) din Codul penal al Republicii Moldova. Curtea l-a condamnat pe dl Șor la 15 ani de închisoare.

18. Pronunțarea deciziei motivate (hotărârea scrisă a Curții) prin care s-a confirmat condamnarea dlui Șor a avut loc la 30 mai 2023. Decizia motivată are un volum de aproximativ 200 de pagini, iar o traducere profesionistă în limba engleză nu a fost încă obținută. Cu toate acestea, confirm că instanța a continuat să se bazeze pe mărturia dlui Dohotaru din procesul în primă instanță ca probă principală împotriva dlui Șor.

19. Sau, făcând abstracție de toate argumentele apărării privind lipsa veridicității declarațiilor dlui Dohotaru și a solicitărilor de audiere a acestuia în instanța de apel (în oricare din modalitățile prevăzute de Codul de procedură penală), mai ales, în contextul probelor noi administrate, Curtea de Apel Chișinău a agravat situația dlui Șor, fiind pronunțată o soluție mult mai gravă față de cea dată de prima instanță, fără ca să audieze martorul respectiv, dar, bazându-se pe cele declarate de acesta anterior, care de altfel nici măcar nu au fost date citirii în modul prevăzut.În pofida faptului că procedura de apel s-a încheiat acum și în lumina circumstanțelor prezentate în prezenta declarație, consider că luarea mărturiei dlui Dohotaru rămâne de o importanță esențială și deosebit de actuală.

### Casație (recurs) ordinară

20. În primul rând, la data de 30 iunie 2023 sau înainte de această dată (adică în termenul legal de 30 de zile de la data pronunțării deciziei motivate), eu și colegul meu avocat vom iniția un recurs în casație la Curtea Supremă de Justiție a Republicii Moldova, care constituie instanța internă de ultimă instanță.

21. În conformitate cu articolul 435 din Codul de procedură penală al Republicii Moldova, Curtea Supremă de Justiție este competentă să emită una dintre următoarele decizii:

(i) respingerea recursului ca inadmisibil și menținerea hotărârii atacate, sau

5

(ii) admiterea recursului şi revocarea, în întregime sau în parte, a hotărârii atacate prin:

- menţinerea hotărârii instanţei de fond în cazul în care se consideră că recursul a fost admis în mod eronat,

- achitarea inculpatului sau încetarea procedurii penale împotriva acestuia,

- rejudecarea cauzei şi pronunţarea unei noi hotărâri sau dispunerea rejudecării cauzei de către Curtea de Apel în cazul în care eroarea judiciară nu poate fi remediată de către Curtea Supremă de Justiţie.

22. În principiu, Curtea Supremă de Justiţie se pronunţă în primul rând asupra chestiunilor de drept şi nu este, în general, o instanţă de fapt. Cu toate acestea, în această etapă pot fi totuşi introduse probe noi dacă acestea nu erau cunoscute de inculpat sau dacă inculpatul nu a avut acces la aceste probe înainte ca instanţa de apel să emită verdictul său.

23. În circumstanţele prezentei cauze, luarea mărturiei dlui Dohotaru este în mod necesar condiţionată de acceptarea Petiţiei. Ca atare, dl Şor nu a avut acces la această probă în timpul procedurii în faţa Curţii de Apel şi va avea dreptul de a o prezenta, odată obţinută, în faţa Curţii Supreme de Justiţie.

24. În acest context, sunt de părere că mărturiile şi documentele obţinute de la dl Dohotaru pot fi încă introduse şi evaluate în cadrul procedurilor penale împotriva dlui Şor, fie în faţa Curţii Supreme de Justiţie, fie în faţa Curţii de Apel (în cazul în care Curtea Supremă de Justiţie va dispune rejudecarea cauzei de către Curtea de Apel).

### Căi extraordinare de atac

25. În plus faţă de cele de mai sus, Codul de procedură penală al Republicii Moldova prevede aşa-numitele căi de atac extraordinare - "recursul în anulare" şi "revizuirea procedurilor penale", care pot fi introduse în ceea ce priveşte hotărârile irevocabile (adică atunci când toate căile de atac ordinare au fost epuizate). O cale extraordinară de atac în favoarea inculpatului poate fi iniţiată în orice moment.

26. În conformitate cu articolul 458 din Codul de procedură penală al Republicii Moldova, se poate solicita o "revizuire a procedurilor penale" în cazul în care fapte noi, necunoscute la momentul pronunţării hotărârii definitive şi irevocabile, dovedesc

6

nevinovăția inculpatului sau că acesta a comis o infracțiune mai puțin gravă decât cea pentru care a fost condamnat.

27. În conformitate cu articolele 462 și 463 din Codul de procedură penală al Republicii Moldova, o "revizuire a procedurilor penale" este o audiere *de novo* a cauzei în conformitate cu normele de procedură aplicabile proceselor în primă instanță, inclusiv reexaminarea probelor admise anterior și evaluarea probelor noi prezentate de către părți.

### *Concluzie*

28. În calitate de avocat al dlui Șor în cadrul procedurilor penale din Republica Moldova, pot să afirm că dl Șor nu încearcă să eludeze nicio restricție aplicabilă privind colectarea probelor. După cunoștințele mele, nu există nicio normă care să-i interzică dlui Șor să depună Petiția în Statele Unite ale Americii.

Declar, sub sancțiunea de sperjur în conformitate cu legile Statelor Unite ale Americii, că cele de mai sus sunt adevărate și corecte. Semnat la data de [...] la Chișinău, Republica Moldova.

/s/

Aureliu Colenco

7